# USE OF FORCE
## What Every Street Officer Needs to Know...

**Attorney Eric P. Daigle**

Daigle Law Group, LLC
(860) 270-0060
Eric.Daigle@DaigleLawGroup.com

**DLG**
DAIGLE LAW GROUP, LLC

# TRAINING OBJECTIVES

- Knowledge is power
- Properly document your actions
- Understand basis of actions against police
    - Policy Drafting
    - Training
    - Report Writing
    - Documentation of Evidence

DLG
Daigle Law Group, LLC

## History of TASER Cases ....

- **Beaver v. The City of Federal Way,**
  507 F.Supp.2d 1137(W.D.Wash. 2007); (Qualified Immunity upheld by 301 Fed.Appx. 704 (9th 2008)
  - Active v. Passive resistance
- **Casey v. The City of Federal Heights,**
  529 F.3d 1278 (10th Cir. 2007)
  - Warning necessary
- **Brown v. City of Golden Valley,**
  534 F.Supp.2d 984 (D. Minn. 2008)           (8th Cir, 2009)
  Affirmed, 2009 U.S. App. LEXIS 16071 (2009)
  - No Qualified Immunity
- **Parker v. Gerrish,**
  - 547 F.3d 1 (1st Cir., 2008)
  - **Cuffing could have been done without the need for a Taser and it was simply a question of timing**

DLG

## What's New.....

- **Heston v. City of Salinas**
  - Jury Trial (2008)
  - City of Salinas police officers utilized multiple Tasers with 20 - 23 discharges against Robert Heston, Jr in about 70 seconds.
- **Bryan v. McPherson**
  - 2009 U.S. App. Lexis 28413 (9th Circuit)
- **Mattos v. Agarano**
  - 2010 WL 92478 (9th Cir. (Hawai'i))

DLG

WICHITA 000937

## Beaver v. Federal Way

- In 2007, the United States District Court for the Western District of Washington at Seattle issued an opinion in their analysis of a summary judgment motion in the case of <u>Beaver v. The City of Federal Way.</u>
- In <u>Beaver</u>, the issues clearly presented is at what point, if any, do multiple Taser applications against a suspect constitute excessive force.

DLG

## Beaver

- After being "Tased" five times during the course of an arrest for a residential burglary, the plaintiff, Mr. Beaver, sued the defendants under 42 U.S.C. Section 1983 claiming that Officer Laird had used excessive force in making the arrest.
- In August 2004, Mr. Beaver had been smoking crack cocaine, marijuana and drinking alcohol.
- A federal way Police Officer Douglas Laird was dispatched to investigate the report of a residential burglary.

DLG

## Beaver

**TASER DISCHARGE REPORT**

- Application 1:   13:24:32
- Application 2:   13:24:53
- Application 3:   13:25:00
- Application 4:   13:25:15
- Application 5:   13:25:42

DLG

## Beaver

- In conducting its analysis, the Beaver court determined that the use of Taser did constitute a significant force.
- The court recognized that while the advent of the Taser has undeniably provided law enforcement officers with a useful tool to subdue suspects with minimal risk of harm to the suspect or the officer, it is equally undeniable that being "tased" is a painful experience.

DLG

## Beaver

- Conducted a <u>Graham</u> Analysis
  - Severity of the Crime
    - No violent burglary
  - Immediate Threat of Safety
    - No threats or visible weapons
  - Actively resisting or attempting to evade arrest
    - First two tasings justified- backup officer
    - Fourth and Fifth were not objectively Reasonable

DLG

## Beaver

- The court concluded by stating that as far as it was concerned, the following issues are now clearly established.
- First, the use of a taser involves the application of force.
- Second, each application of a taser involves an additional use of force.
- Third, multiple applications of a taser cannot be justified solely on the grounds that a suspect fails to comply with a command, absent other indications that the suspect is about to flee or poses an immediate threat to an officer.

DLG

## Beaver

- The court found that this is particularly true when more than one officer is present to assist and control a situation.
- Fourth and finally, the court concluded that any decision to apply multiple applications of a Taser must take into consideration whether a suspect is capable of complying with the officers' commands.

DLG

## Parker v. Gerrish

- First Circuit Court of Appeals, November 2008
- A jury found in favor of plaintiff, Stephen Parker, on his claim that defendant, Officer Kevin Gerrish of the South Portland Police Department, violated his constitutional rights by using his Taser during the course of arresting Parker for operating a motor vehicle while under the influence of alcohol.
- The jury awarded $ 111,000 to Parker, who complained that the use of the Taser and subsequent cuffing caused nerve damage to his arm and injured his shoulder.
- Gerrish disputes the finding of excessive force, argues that he is entitled to qualified immunity

DLG

44

## Parker

- At around noon on July 20, 2005, Parker and his girlfriend went boating. While on the boat, Parker consumed "3 or 4" 16 ounce cups of a cocktail of ginger ale and whiskey. At around 7:00 PM, Parker docked his boat in the marina and proceeded to drive his girlfriend home. While driving home, Parker passed Gerrish.
- Gerrish observed Parker's vehicle, visually estimated that Parker was speeding, pursued Parker, and effected a traffic stop. When Gerrish turned on his police lights, a video camera began recording. The video recording did not include audio.

DLG

## Parker

- Gerrish failed the sobriety test and said "do what you have to do."
- Gerrish then attempted to physically uncross Parker's arms and place him under arrest. Gerrish readied his handcuffs while grabbing Parker's arm, which was still crossed in front of his chest. Gerrish tried to move Parker's arm, but Parker resisted.
- Gerrish then stepped back, drew his Taser, and ordered Parker to turn around and place his hands behind his back. Parker complied, turned around, and clasped his right wrist with his left hand.

DLG

## Parker

- Gerrish testified that once the first cuff was on he saw a struggle between the cuffing officer and Parker. Gerrish did admit that he couldn't really see what was happening because his view was partially blocked.
- Cuffing officer testified that Parker tried to pull his hands free after the first cuff was applied, but he never let go of Parkers hand and felt that he could have finished the cuffing without the Taser being employed. Important .....

DLG

## Parker

- The first Circuit court said that a reasonable jury could ave believed that the cuffing could have been done without the need for a Taser and it was simply a question of timing, that Gerrish should have waited a few seconds before using the Taser and if he had Parker would have been arrested without injury.

DLG



## Bryan v. McPherson
### Ninth Cir. 2009

- Officer Brian McPherson deployed his taser against Carl Bryan during a traffic stop for a seatbelt infraction.
- Appellate Court Affirmed DC holding that Officer McPherson's use of the taser was unconstitutionally excessive and a violation of Bryan's clearly established rights.

DLG

47

WICHITA 000944

## Bryan

- A California motorist was stopped by an officer for a seatbelt law violation. Upon being stopped, the motorist realized that he had forgotten to buckle his seatbelt following his stop earlier that morning by a California Highway Patrolman who gave him a speeding ticket.
- The motorist simply stared straight ahead and did not respond when the officer asked him if he knew why he had been stopped. He complied, however, with the officer's orders to turn down his radio and pull over to the curb.
- When the motorist stepped out of his vehicle, he was —agitated, and —yelling gibberish and hitting his thighs, clad only in his boxer shorts and tennis shoes.

DLG

## Bryan

- It was undisputed that Bryan did not verbally threaten Officer McPherson and, according to Officer McPherson, was standing twenty to twenty-five feet away and not attempting to flee.
- Officer did testify that he took "one step" towards him. Bryan denies.
- Without giving any warning, Officer McPherson shot Bryan with his taser gun. One of the taser probes embedded in the side of Bryan's upper left arm. The electrical current immobilized him whereupon he fell face first into the ground, fracturing four teeth and suffering facial contusions.

48

## Bryan

- We, along with our sister circuits, have held that tasers and stun guns fall into the category of non-lethal force.
- We therefore conclude that tasers like the X26 constitute an "intermediate or medium, though not insignificant, quantum of force,"
- We hold only that the X26 and similar devices constitute an intermediate, significant level of force that must be justified by "'a strong government interest [that] *compels* the employment of such force.'"

DLG

## Bryan

- Even if Bryan had taken a single step toward Officer McPherson, this would not have rendered him an immediate threat justifying an intermediate level of force, as he still would have been roughly nineteen to twenty-four feet away from Officer McPherson, by the officer's own estimate.
- We thus conclude that the intermediate level of force employed by Officer McPherson against Bryan was excessive in light of the governmental interests at stake. Bryan never attempted to flee. He was clearly unarmed and was standing, without advancing in any direction, next to his vehicle.

DLG

49

## Bryan

- Officer McPherson was standing approximately twenty feet away observing Bryan's stationary, bizarre tantrum with his X26 drawn and charged. Consequently, the objective facts reveal a tense, but static, situation with Officer McPherson ready to respond to any developments while awaiting back-up. Bryan was neither a flight risk, a dangerous felon, nor an immediate threat. Therefore, there was simply "no immediate need to subdue [Bryan]" before Officer McPherson's fellow officers arrived or less-invasive means were attempted.

DLG

## Crowell v. Kirkpatrick
(2nd Circuit 2010)

- 2nd Circuit upheld a District Court's ruling that the use of a Taser on a protestor who refused to unchain themselves from a barrel was not unreasonable under the 4th Amendment.
- Brattleboro, VT- Group of protestors on a recently cleared lot owned by Cheshire Oil
- Next morning two protestors remained chained themselves to a barrel.

DLG

## Crowell

- Court held that while the plaintiffs were arrested for relatively minor crimes of trespass and resisting arrest, and were actively resisting at the time they were stunned by the officers.
- Court focused on the fact that the officers warned the plaintiff's before applying the Taser.

DLG

## Mattos v. Agarano and Brooks v. City of Seattle

- 9th Cir. En Banc Review October 17, 2011
- The Ninth Circuit Court consolidated two separate cases – Mattos v. Agarano and Brooks v. City of Seattle – in which questions arose as to whether the use of a taser weapon involved an excessive use of force, and whether the officers were entitled to qualified immunity.

DLG

51

WICHITA 000948

## Brooks v. City of Seattle

- Drive stun application on a female who is seven months pregnant.
- Speeding in a school zone
- Refused to sign the infraction.
- Refused to get out of the car and told officers that she was pregnant.
- Officers discussed options and demonstrated Taser use.
- Three applications – left thigh, left arm and neck.

DLG

## Brooks v. City of Seattle

- Speeding – was not a serious offense
- Did not pose a serious threat to the officers
- Did engage in some resistance but that her resistance did not pose a potential threat to the officers.
- What factors did the court consider in determining the force was unconstitutional?

DLG

52

## Brooks v. City of Seattle

- two additional factors played a greater role in determining the totality of circumstances:
  - (1) Brooks notified the officers that she was pregnant, and the officers considered this information when deciding where to apply the taser; and
  - (2) the officers tased Brooks three times over the course of less than one minute.

## Brooks v. City of Seattle

- The Court stated that tasing Brooks in such a rapid succession allowed no time for her to recover from the pain and reconsider her refusal to comply with the officers requests.

DLG

53

## Mattos v. Agarano

- Each and every application of an ECD must be legally justified.
- When using an ECD in "drive-stun" mode to gain compliance from a suspect who is "actively resisting" arrest, the officer must give the suspect reasonable opportunity to comply with the officer's commands prior to each ECD application.

DLG

## Mattos v. Agarano

- Must perceive that the suspect is "actively resisting."
- Must be certain that the suspect is capable of compliance with the officer's commands.
- Must give a warning prior to each application of the ECD.
- Must give the suspect time to recover from the "extreme pain" experienced during the ECD application.

DLG

54

## Mattos v. Agarano

- Must give the suspect a reasonable amount of time to "gather herself."
- Must give the suspect a reasonable opportunity to consider the consequences of her refusal to comply with commands before each ECD application.
- The reporting requirements contained in the policy must provide that an officer is required to include in his report specific information indicating that all of these guidelines were followed prior to the application of an ECD.

DLG

## Legal Conclusions

- It is mandated that officers should be aware of the active versus passive resistance analysis under the Graham standards that are being applied.
- Officers must make fact based decisions in difficult and tense situations to support a claim of active resistance.
  - Every trigger pull must justified as a separate use of force
  - Officers need to take into consideration secondary injuries
  - Is the suspect capable of complying with commands

DLG

## Conclusion

- Analysis of Taser application cases shows a trend among officers relying on the Taser devise in place of physical contact to apprehend and handcuff a suspect.
  - Give warning "if feasible."
  - Over reliance on the Taser weapon – Version 16
  - Use Scenario based training.
  - Proper policy and enforcement of the policy

DLG

## Suicidal / Mentally Ill Suspects



WICHITA 000953