IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOE C. WASHINGTON,

        Plaintiff,

v.                                    Case No. 16-CV-02100-CM-GEB

JARED HENRY, in his individual
capacity, and DONALD MOORE,
in his individual capacity,

        Defendants.

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff Washington's response to defendants' motion for summary judgment ignores the judicial and collateral estoppel issues developed in defendants' memorandum. By failing to address these issues, plaintiff concedes them. See *Kay-Cee Enterprises, Inc. v. Amoco Oil Co.,* 45 F.Supp.2d 840, 847 (D.Kan. 1999) (Party who fails to address issue briefed by moving party on summary judgment is deemed to admit moving party's position). "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Phillips v. Calhoun,* 956 F.2d 949, 953-54 (10th Cir.1992) quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990).

Because plaintiff is bound to the elements of the crimes he admitted, his deposition testimony that contradicts his battery of Officers Henry and Moore, his attempt to take Henry's gun, his interference, possession of drug paraphernalia, transporting an open container and his traffic infraction must be rejected. Because Washington is prevented from relying on his

deposition testimony to create an issue of fact regarding his conduct that justified the use of force by defendants, the record will not support his claim of excessive force.

### DEFENDANTS' STATEMENT OF FACTS

Washington's summary judgment response concedes that most of defendants' statements of fact are uncontroverted. Defendants will address only those statements plaintiff purports to controvert.

20.    Plaintiff notes that Henry did not see anything in Washington's right hand as he pulled him from the car. This fact does not controvert Statement 20 that Henry reasonably perceived that Washington was reaching for a weapon. Had Washington not then battered Henry, additional force would not have been necessary. The statement of Henry in the interview cited by plaintiff was:

> "Yeah. He starts to come out of the car. I don't see anything in his right hand that I was initially concerned about what he was reaching. Um, but then he starts pushing me – pushing – I – I was initially pulling him. But as he started to come I wasn't using my full weight to pull him. Um, then he starts pushing me. So he's pushing against me now as I'm trying not to fall into the fence so I deliver a knee strike to his gut, um, as I, um, try to describe it. His head was on the left side of my body under my arm almost like a form tackle in football. And his other arm is around my waist. And he's pushing me. So I have him by his armpits I guess over his back."

(Henry Interview, ECF 45-2, p. 4).

21.    Washington attempts to controvert his admitted batteries on law enforcement officers, interference, and attempt to take Henry's gun by citing his deposition testimony. Because Washington is judicially and collaterally estopped from taking contrary positions, his deposition testimony is insufficient to controvert Statement 21.

37-38.  Washington agrees that Statements 37 and 38 are "generally uncontroverted." However, he objects that the court records cited are not certified copies and "lack authenticity." These two statements detail the criminal charges resulting from Washington's conduct on August 7, 2014 and his guilty pleas.  The statements are supported not only by the court documents but also by Washington's admissions in his deposition at 88:20-89:17 and in deposition Exhibits 22 and 23, which Washington identified.  (Exh. 6, Washington depo., 133:7-15).

## RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

Defendants respond to plaintiff's additional fact statements using plaintiff's numbering.

1.      Uncontroverted but immaterial.

2.      Controverted.  Washington claimed to initially not have realized that he was being stopped.  He conceded that he was aware he was being signaled to stop after he turned on Random Road but he continued to drive for three turns before stopping in the street and then backing into his driveway.  (See DSOF 11 and 12, uncontroverted by plaintiff).  See K.S.A. 8-1568: "Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop for a pursuing police vehicle . . . when given visual or audible signal to bring the vehicle to a stop, shall be guilty [of a class B nonperson misdemeanor]."  K.S.A. 8-1530 requires the operator to "immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway. . . ."  One needs only to ignore the activated emergency equipment on a police vehicle in order to commit the offense of fleeing or attempting to elude a police officer.  *State v. Russell,* 229 Kan. 124, 127, 622 P.2d 658, 662 (1981).

3.      Uncontroverted that Washington so testified.

4.      Controverted.  Washington's testimony is inconsistent with his admitted crimes. (See DSOF 21, 37-38).

5.      Controverted.  Henry deployed the taser in probe mode twice in an effort to overcome Washington's resistance and gain compliance so Washington could be handcuffed. (See DSOF 21, 37-38; ECF 38-3, Henry Declaration, Exh. A).

6.      Controverted.  Henry tased Washington while Washington was in a tackling position so that his head was under Henry's left arm with his right arm around Henry's waist. Henry first deployed two taser barbs toward the lower back without effect, then tried again with two barbs in the upper back, still with no effect.  (DSOF 21, 37-38; Henry Interview Transcript, ECF 45-2, pp. 7-8, lines 619-663).

7.      Controverted.  Washington's testimony about being hit after he was handcuffed was ambivalent.  He initially testified no one hit him after he was in handcuffs.  (See DSOF 29, ECF 38-2, 57:23-28:23).  He later testified that while still on the ground in handcuffs, he was hit by Officer Henry one last time in the left side, not the head or face.  (See DSOF 31; ECF 38-2, Washington depo., 59:3-61:6).

8.      Uncontroverted.

9.      Controverted.   Although Washington did testify that he was not using drugs, his actions suggested drug use and Washington admitted to Drug Recognition Officer Virgil Miller that he had smoke K2 at about 5:00 and 8:00 p.m. that day.  (Exh. 7, Miller Report, Bates Wichita 000037).[1]  K2 is a synthetic cannabinoid.[2]

10.     Uncontroverted.

_____

[1] This document was initially designated as confidential subject to the protective order by defendants.  Defendants withdraw that designation.
[2] https://www.drugabuse.gov/publications/drugfacts/synthetic-cannabinoids.

11.      Uncontroverted that the toxicology tests which were performed were negative.

However, the test report notes that the Regional Forensic Science Center Lab did not test for

Synthetic Cannabinoids. (ECF 45-5).

12.      Controverted.  Plaintiff offers no foundation for the records relied upon.  Plaintiff

refused to stipulate to foundation for records in the pretrial order.  Only admissible evidence can

be used in opposing a motion for summary judgment.

13.      Uncontroverted.

14.      Generally uncontroverted.  Washington's left eye only shows a subconjunctival

hemorrhage or red spot.  Blood vessels in the eye can break from sneezing, coughing, straining

or even bending over.  See http://www.webmd.com/eye-health/eye-problems-and-blood-in-the-

eye.

15.      Uncontroverted that Washington so testified.

16.      Controverted.  Washington had some pain at the time but "nothin' major" and it

subsided.  (ECF 45-1, lines 1569-1571).  He could feel shock through the taser probes but was

not unable to move, but the shock was "kinda intense."  (ECF 45-1, lines 1577-1598).  See also

DSOF 36.

17.      Uncontroverted that Henry was disciplined for deploying a taser in 2009 on a

bicyclist contrary to department regulations.  (ECF 45-9).  This evidence is irrelevant and is

inadmissible under F.R.E. 404(b)(1).  *Tanberg v. Sholtis*, 401 F.3d 1151, 1168 (10th Cir. 2005).

## ARGUMENTS AND AUTHORITIES

### I.   COLLATERAL ESTOPPEL PRECLUDES PLAINTIFF FROM CHALLENGING THE BASIS FOR HIS ARREST.

Plaintiff does not respond to this issue and therefore concedes it. *Kay-Cee Enterprises, Inc. v. Amoco Oil Co.,* 45 F.Supp.2d 840, 847 (D.Kan. 1999); *Phillips v. Calhoun,* 956 F.2d 949, 953-54 (10th Cir.1992).

### II.   FOURTEENTH AMENDMENT DOES NOT APPLY.

Plaintiff does not respond to this issue and therefore concedes it. *Ibid.*

### III.   PLAINTIFF'S EVIDENCE FAILS TO SUPPORT A FOURTH AMENDMENT CLAIM AGAINST OFFICER MOORE.

Washington effectively concedes that Officer Moore did not use excessive force. He cites no evidence and makes no argument that Moore personally used excessive force. Instead, Washington shifts to a new theory that Officer Moore violated a duty to intervene to protect him from the alleged excessive force of Officer Henry (ECF 45 at 21-22). Such a claim is not included in either plaintiff's factual allegations nor legal theories preserved in the Pretrial Order. See ECF 33, § (3)(a) and (4)(a). "[A] party who did not preserve an issue [in the Pretrial Order] may not use it in resisting a motion for summary judgment. *Hullman v. Board of Trustees of Pratt Community Com. College*, 950 F.2d 665, 668 (10th Cir. 1991) (citation omitted); *Eads ex rel. Eads v. United School Dist. No. 289, Franklin County, Kan.*, 184 F.Supp.2d 1122, 1131 (D.Kan. 2002). Washington asserted neither facts nor a legal theory based upon a failure to intercede claim against Donald Moore in the Pretrial Order. He is precluded from belatedly attempting such a theory to avoid summary judgment.

Regardless, the facts do not support the elements of a claim of failure to intercede. For an officer to be liable for failure to intercede, the officer must observe or have reason to know

that the other officer is using excessive force and must have had a realistic opportunity to prevent the excessive force and prevent harm from the excessive force.  See *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008).

The first element required to establish a failure to intercede claim is the use of excessive force by another officer, here Officer Henry.  As explained in the subsequent section, Henry did not use excessive force and is entitled to qualified immunity because it was not clearly established that Henry's use of force would violate the Fourth Amendment under the circumstances presented to him.  Because Henry did not engage in excessive force and because it was not clear that Henry's use of force would violate the Fourth Amendment, Officer Moore can have no liability under a failure to intercede theory.

Regardless, even if some component of Henry's use of force was constitutionally excessive, plaintiff fails to establish that Officer Moore observed or had reason to know that Henry was using constitutionally-excessive force in time for Moore to have a "realistic opportunity to prevent the harm from occurring." *Id.*  Indeed, the entire arrest of Washington from the time of the traffic stop until Washington was in custody took less than a minute.  Moore's observation of Washington struggling with Officer Henry justified Moore in believing that force was necessary.  An officer who arrives on scene after another officer has the right to assume that officer follows proper procedures until he has information to the contrary.  See *White v. Pauly,* 137 S.Ct. 548, 550 (2017).  See also *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998) (Officer entitled to rely on initial officer's determination of probable cause for arrest).

Officer Moore was backing the patrol car to avoid being hit by the car driven by Washington.  When Moore first saw physical contact between Officer Henry and Washington, it

appeared to him that Washington had either tackled or pushed Henry into a chain link fence. (Exh. 8, Moore interview transcript, lines 343-355).[3]  Moore joined to assist, attempting to pull Washington off of Henry who was on the ground.  (*Id*., lines 362-364).  Officer Moore eventually applied hand strikes to Washington's right arm which had grasped a chain link fence before he succeeded in pulling Washington off of Henry.  (*Id*., lines 535-608).  Officer Hemmert arrived as Moore was able to get Washington off of Henry and on to his stomach and, with the assistance of Hemmert, they were able to secure Washington in handcuffs.  (*Id*., lines 634-659). Moore did observe Henry deploy a taser at a time while Washington was actively resisting and failing to comply with commands.  (*Id*., lines 946-955).  Plaintiff cites no evidence that Moore observed any other use of force by Officer Henry.  The only use of force Moore observed was reasonable under the circumstances known to Moore so Moore had no duty to intercede. Regardless, plaintiff cites no evidence suggesting that Moore had a "realistic opportunity" to prevent any use of force by Henry.  Even though Washington ambivalently suggested in his deposition that Henry struck him once in the side after he was handcuffed, even if such a strike was considered excessive, no evidence suggests Moore observed such a strike or that he observed such a strike while in a position to prevent it.

Plaintiff cites no evidence to create an issue of fact whether Officer Moore observed constitutionally-excessive force, had an opportunity to prevent the use of excessive force and failed to do so.  Officer Moore is entitled to summary judgment.

---

[3] This document was part of an internal affairs investigation initially designated as subject to the protective order by defendants.  Defendants withdraw that designation.

IV.    **HENRY IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE WASHINGTON IS ESTOPPED FROM DENYING HIS COMMISSION OF THE ELEMENTS OF THE CRIMES TO WHICH HE PLED GUILTY.**

Plaintiff partially addresses this issue in Section I, pages 6-16 of ECF 45.  However, plaintiff completely fails to address the judicial estoppel and collateral estoppel defenses that preclude him from relying on his deposition testimony which contradicts the facts that comprise the elements of the crimes to which he pled guilty.  Again, by failing to respond to an issue raised on summary judgment and supported with pertinent authority, plaintiff waives opposition to and concedes the issue. *Kay-Cee Enterprises, Inc. v. Amoco Oil Co.,* 45 F.Supp.2d 840, 847 (D.Kan. 1999); *Phillips v. Calhoun,* 956 F.2d 949, 953-54 (10th Cir.1992).

The qualified immunity issue presented by the summary judgment motion is not whether Officer Henry used objectively unreasonable force under the purported facts based on Washington's testimony but whether Officer Henry used objectively unreasonable force when plaintiff has conceded active physical resistance to arrest by pleading guilty to three counts of battery on a law enforcement officer, interference and attempted deprivation of property by his attempt to pull Henry's gun from its holster.  Consequently, plaintiff's approach to the issue of Officer Henry's entitlement to qualified immunity misses the target.

Plaintiff correctly notes that an officer's use of force is governed by the objective reasonableness standard of the Fourth Amendment which is to be judged from the perspective of a reasonable officer on the scene without the benefit of hindsight and that factors to consider include the severity of the crime involved, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting arrest.  (ECF 45, p. 7 citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

Plaintiff argues that the severity of his crime did not justify the use of force because plaintiff had only been stopped for a minor traffic infraction, failing to signal a turn. (ECF 45, p. 7-8). Plaintiff's analysis is misleading. Henry used no force because of the turn signal violation, or even because Washington ignored the emergency lights and siren for blocks instead of immediately pulling to right and stopping as required by K.S.A. 8-1530. The first force used by Henry occurred when Washington reached toward the floor of his car. Coupled with Washington's failure to comply with the emergency lights and siren and his backing into his driveway, which raised concerns about Washington's intentions, and Washington's suspicious movement toward a location which experienced officers know to be where weapons are sometimes hidden, Henry used reasonable and measured force to pull Washington from the car to prevent him from accessing a weapon. Henry used other force, a knee strike to the abdomen and fist strikes to the ribs only after Washington began his battery of Henry by tackling Henry into a fence. Henry unsuccessfully deployed his taser in an attempt to deter further aggression and battery as Washington tried to gain access to a potentially lethal weapon, Henry's gun. The crime severity factor favors approval of the force used by Henry. Active resistance to arrest characterized by multiple batteries on officers and an effort to gain control of an officer's gun are very severe crimes that justify significant force to subdue the suspect.

Washington contends that the second factor involving a threat to safety of the officers also weighs against the reasonableness of the force use. Again, Washington fails to recognize that he is bound by his guilty pleas. Plainly, a suspect who batters officers and attempts to gain control of a lethal weapon presents a significant and immediate threat to the safety of the officers as well as any potential bystanders or neighbors. The second factor also supports the reasonableness of the force used by Henry.

The third factor, whether the suspect is actively resisting arrest, also supports the necessity of the force used by Henry. Each of these factors must be considered from the perspective of Officer Henry, not the subjective intentions of Washington.

Washington cites the interview of Officer Hemmert, suggesting that Hemmert supports Washington's testimony that he was not resisting. It does not. Hemmert arrived about a minute after Henry had pulled Washington from the car, near the end of the struggle. (ECF 45-12, p. 2). Hemmert stated that he got a handcuff on Washington's right arm and used the cuff as leverage to pull it to the middle of his back and "everybody's saying, 'Give us your arm. Give us your left arm.' And goes for not very long for maybe five seconds between that point and we get his left arm and get the other handcuff on." (ECF 45-12, p. 3, lines 230-234). Hemmert's interview demonstrates the continued resistance of Washington to handcuffing, even after a third officer arrived to assist.

In opposing a qualified immunity defense, it is plaintiff's burden to establish that defendant violated a clearly established constitutional right. Plaintiff must demonstrate that Henry's use of force violated clearly established law "particularized" to the facts of this case. *White v. Pauly,* __ U.S. __, 137 S.Ct. 548, 552 (2017). Plaintiff cites no case, much less a case before August 7, 2014, which concluded that use of fist strikes, a knee strike and multiple applications of a taser violate Fourth Amendment rights when a suspect is engaged in battery of a law enforcement officer, actively resisting and attempting to gain control of an officer's firearm.

Plaintiff is required to articulate with specificity the clearly established constitutional right and the defendant's conduct which violated that right. *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). The decision in *Beaver v City of Federal Way*, 507 F.Supp.2d 1137 (W.D. Wash. 2007) relied upon by Washington does not suffice. First, an isolated decision from

another federal district court in another circuit does not constitute "clearly established" law in the Tenth Circuit.  "Ordinarily in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains."  *Medina v. City & Co. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

Regardless, the circumstances in *Federal Way* are not comparable to those confronted by Officer Henry.  The Washington federal district court found that three taser applications were not excessive while the officer was alone making split-second decisions with a fleeing, unarmed burglary suspect, which is more similar to Henry's use of the taser as Washington was on top of him.  While that court found that fourth and fifth applications were excessive, by the time of those applications a second officer had arrived and the suspect was lying on the ground a safe distance from the officers presenting no threat and questionable passive resistance.  Even though that court found those applications excessive, the court recognized that the law was not then clearly established, finding the officers entitled to qualified immunity.  Unlike Washington, the *Federal Way* suspect never actively resisted by battering any officer and did not attempt to take control of a deadly weapon, he was merely noncompliant. Officer Henry used the taser only in the midst of active resistance by Washington.  *Federal Way* supports the propriety of Officer Henry's split-second decisions to use the taser, a knee strike and fist strikes in an effort to overcome Washington's resistance.

Washington cites two cases for the proposition that "use of a Taser without giving warning before deploying it may constitute excessive force was clearly established as early as 2007."  (Washington's Summary Judgment Response, ECF 45, p. 17).   The first case cited by Washington, *Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007), involved a much

different situation than confronted by Officer Henry.  The Tenth Circuit panel noted: "In sum, we are faced with the use of force—an arm-lock, a tackling, a Tasering, and a beating—against one suspected of innocuously committing a misdemeanor, who was neither violent nor attempting to flee." At most, *Casey* concluded that a warning should be given before tasing a **non-violent** misdemeanant who is not physically resisting in the "absence of facts making clear that no warning was necessary."  *Id.* at 1285.  However, the situation presented in Casey is easily contrasted from the criminal conduct of Washington which involved battery of law enforcement officers and an attempt to control a lethal weapon.  Washington identifies no controlling precedent that a warning is required before tasing and suspect who is actively fighting officers. Indeed, in *White v. Pauly,* __ U.S. __, 137 S.Ct. 548, 550 (2017), the Supreme Court found that the law was not clearly established that a warning was required before using deadly force when a suspect pointed a gun in an officer's direction.

   Regardless, reliance on *Casey* is suspect.  Although *Casey* has not been directly reversed, it represents one of several Tenth Circuit decisions in which the Circuit had continued to fail to heed the Supreme Court's repeated warnings that rejection of a qualified immunity defense requires the court find precedent particularized to the circumstances confronted by the officer that would make it "beyond dispute" that the officer's conduct would violate the Fourth Amendment.  See e.g. *Albada v Pickens,* 844 F.3d 870 (10th Cir. 2016) (granting qualified immunity defense after Supreme Court reversed 10th Circuit's initial denial); *White v. Pauly,* __ U.S. __, 137 S.Ct. 548, 550 (2017) (Reversing denial of qualified immunity by 10th Circuit and noting that "[i]n the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases" and re-emphasizing the requirement of particularized precedent).

The second case cited by Washington, *Meachem v. Frazier*, 500 F.3d 1200 (10th Cir. 2007) does not support his contention.  In *Meachem*, the Court reversed the denial of a qualified immunity defense where an officer used pepper spray against a passively resisting woman who refused to exit her car so it could be towed after a traffic stop.  The opinion does not suggest that a specific warning of an impending use of pepper spray was required.  Regardless, again the acknowledged physical resistance of Washington distinguishes the situation confronted by Officer Henry from solely passive resistance confronted by the officer in *Meachem.*

Washington identifies no case, much less a Supreme Court or Tenth Circuit case, which "squarely governs" here by establishing that use of a taser against an actively resisting suspect violates the Fourth Amendment. See *Brosseau v. Haugen,* 543 U.S. 194, 201, 125 S.Ct. 596, 596 (2004) (noting none of the previous cases "squarely govern" the case here, rather the officer's action fell in the "hazy border between excessive and acceptable force" requiring application of qualified immunity).

Washington does provide questionable testimony that Officer Henry hit him once in the side after he was handcuffed.  But that single strike did not cause significant injury and required no medical treatment.  Even if the propriety of such a blow would be questionable, precedent does not clearly establish that it would violate the Fourth Amendment.  See *Cortez v McCauley,* 478 F.3d 1108, 112-1127 (10th Cir. 2007) and *Davis v. McCarter,* 569 F.Supp.2d 1201 (D.Kan. 2008) discussed in defendant's initial brief, ECF 38, pp. 17-18.

Officer Henry is entitled to qualified immunity from plaintiff's claims both because he did not use excessive force and his use of force did not contravene any clearly established law.

## CONCLUSION

In pleading guilty to three counts of battery on a law enforcement officer and attempted deprivation of property in attempting to take Officer Henry's gun, Washington admitted aggressive physical resistance to arrest.  Officer Henry's initial suspicion of Washington's action was justified by Washington ignoring the legal requirement that he immediately pull his vehicle to the right and stop when signaled by law enforcement and then admittedly reaching toward the floor of his vehicle after being stopped.  Henry's reaction to only use "muscling" to pull Washington from the car to prevent him from accessing a weapon was admirably restrained. Only when Washington began to batter and physically resist Henry did Henry escalate to fist strikes and tasing in the effort to overcome Washington's resistance.  The force used by Officer Henry was not excessive and plaintiff has identified no controlling precedent that "squarely governs" the result here that Henry's force was constitutionally excessive.

Officer Moore used minimal force – five or six fist strikes to Washington's right arm to dislodge his grip of the chain link fence.  Washington abandoned any claim that the force used by Moore was excessive by failing to address the issue.   Nor is Officer Moore liable for any force employed by Officer Henry.  Washington preserved no such claim in the pretrial order. Regardless, Moore did not supervise Henry, did not see any constitutionally excessive force and had no opportunity to prevent any excessive force by Henry.  Moore did not violate Washington's Fourth Amendment rights.

/s/ J. Steven Pigg
J. Steven Pigg                                    #09213
FISHER, PATTERSON, SAYLER & SMITH, L.L.P.
3550 S.W. 5th Street, P.O. Box 949
Topeka, KS  66601-0949
(785) 232-7761 / (785) 232-6604 – fax
E-mail:  spigg@fisherpatterson.com
**Attorney for Defendants**

and

JENNIFER L. MAGAÑA, #15519
City Attorney
SHARON L. DICKGRAFE  #14071
Chief Deputy City Attorney
City Hall-13th Floor
455 North Main
Wichita, KS 67202
(316) 268-4681 / (316) 268-4335 – fax
Email:  sdickgrafe@wichita.gov
**Attorney for City of Wichita**

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2017, I electronically filed the foregoing with the clerk

of the court by using the CM/ECF system which will send a notice of electronic filing to the

following:

Prince Adebayo Ogunmeno
Attorney at Law
155 S. 18th St., Suite 250
Kansas City, KS  66102-5654
aikogun@ogunmenolawfirm.com
**Attorney for Plaintiff**

I further certify that I mailed the foregoing document and the notice of electronic filing

by first-class mail to the following non-CM/ECF participants: No one.

/s/ J. Steven Pigg
J. Steven Pigg                                                #09213