# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JOE C. WASHINGON,

    Plaintiff,

    v.

JARED HENRY, et al,

    Defendants.

Case No. 16-2100-CM

## MEMORANDUM AND ORDER

Plaintiff Joe C. Washington brings this action under 42 U.S.C. § 1983 against Wichita police officers Jared Henry and Donald Moore alleging that defendants violated his Fourth Amendment rights by using excessive force while arresting him. Plaintiff was arrested at his home on August 7, 2014 and later pleaded guilty to numerous charged related to the incident.

The matter is now before the court on defendants' Motion for Summary Judgment (Doc. 37). Defendants allege they are qualifiedly immune because they acted reasonably in response to plaintiff's resistance. They argue plaintiff is judicially and collaterally estopped from claiming he did not resist during the incident because he pleaded guilty to three counts of battery. For the following reasons, the court finds defendants are entitled to qualified immunity and therefore grants defendants' motions.

    **I.**    **Factual Background**

On the evening of August 7, 2014, plaintiff was at home watching a football game on TV with a friend. At the conclusion of the game, plaintiff drove his friend home and stopped at a liquor store. As he drove back to his house, plaintiff noticed flashing blue lights approximately two blocks behind him. Plaintiff, however, continued to drive home despite the police car remaining behind him with its lights flashing. As plaintiff approached his house, he stopped his car in the middle of the road and then

-1-

backed into his driveway. As he was parking his car—with his windows rolled down—plaintiff noticed the police car had stopped in the middle of the street and that an officer was running in his direction. Plaintiff testified that as he reached down to apply his emergency break, the officer ran up to the driver's side door, grabbed him by his shirt, pulled him out of the car, and shoved him to the ground. Plaintiff alleges at this time he was severely beaten by the officer—later identified as Officer Henry—without any provocation on his part. He claims that Officer Henry straddled him across the back and punched him in the ribs with his fist and punched him in the head all while telling him to "not resist." Plaintiff denies ever resisting arrest and instead maintains he was immediately pinned to the ground, unable to move, while continuing to plead with Officer Henry to determine what he had done wrong. It is uncontroverted that at some point during the approximately 45-second struggle, plaintiff was tased at least two times. Officers managed to place plaintiff under arrest, and he was struck in the head at least one more time while in handcuffs.

Defendants' account of the incident is largely consistent with plaintiffs' story. Defendants allege that on the night of August 7, 2014, they observed plaintiff making a right-hand turn without using a turn signal. Defendants activated their emergency lights and siren and began to follow plaintiff. Plaintiff, however, disregarded the officers and continued to drive several blocks to his home. Defendants grew suspicious as plaintiff stopped his car and reversed to back it into his driveway. Officer Henry, uncertain of whether plaintiff intended to reverse his car in order to flee the scene, drew his firearm and then approached the car as it came to a stop in the driveway. After holstering his gun, Officer Henry approached the driver's side window to instruct plaintiff to get out of the car. As he approached the car, he noticed plaintiff reaching down "as if to retrieve something from under the seat where some people keep weapons." (Doc. 38–3, at 3.) Officer Henry responded by pulling plaintiff out of the car. At this point, defendants claim plaintiff tackled Officer Henry into a

chain link fence, prompting an ensuing struggle. Officer Henry maintains that he felt plaintiff attempt to grab his gun from his holster and attempt to grab his taser. Defendants admit Officer Henry tased plaintiff in an attempt to overcome his resistance in order to place him under arrest. Additional officers arrived at the scene to assist, and plaintiff was eventually handcuffed.

An ambulance arrived at the scene, and it is controverted as to whether plaintiff refused medical assistance or was denied further medical treatment. Plaintiff claims he suffered "redness" to his left eye and that prior shoulder injuries were aggravated because of the struggle.

Plaintiff was charged in Sedgwick County District Court with felony Attempted Robbery for trying to grab Officer Henry's gun, and several misdemeanors and traffic infractions. Plaintiff pleaded guilty to eight amended charges including three counts of misdemeanor battery, and one count each of interference with law enforcement, attempted criminal deprivation of property, possession of paraphernalia, transporting an open container, and failure to signal when turning.

**II. Legal Standards**

**a. Summary Judgment**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party demonstrates an absence of evidence in support of an element of the case, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The nonmoving party "may not rest upon the mere allegations or denials of his pleading." *Id.*

In making the summary judgment determination, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 252.

### b. Qualified Immunity

Qualified immunity recognizes "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When a defendant has moved for summary judgment based on qualified immunity, the court must "view the facts in the light most favorable to the non-moving party and resolve all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). A defendant is entitled to qualified immunity unless the plaintiff can show "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* The Supreme Court has held a court has the discretion to consider "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If, however, a plaintiff successfully overcomes the two-part analysis, the burden shifts to the defendant "as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Booker*, 745 F.3d at 412.

### III. Analysis

Defendants moved for summary judgment on the basis that they are entitled to qualified immunity, alleging that the use of force was justified based on plaintiff's resistance to officers during the encounter. Defendants argue that plaintiff cannot claim he was physically passive during the incident because he pleaded guilty to three counts of battery, one count of attempted criminal deprivation of property, and one count of interference with a law enforcement officer. Plaintiff does not address defendant's arguments; rather, he continues to argue that defendants used unprovoked excessive force during his arrest.

As mentioned above, in order to overcome defendants' assertion of qualified immunity, plaintiffs must show "that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have not thought the force constitutionally permissible (violates clearly established law)." *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007). The court will first address whether a constitutional violation exists.

**a. Constitutional Violation**

In deciding whether defendants' conduct was impermissible in violation of plaintiff's constitutional rights, the court must first determine the relevant facts. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Because the case is at the summary judgment stage, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Id.* In qualified immunity cases, this often means adopting the plaintiff's version of facts, so long as that version is not "so utterly discredited by the record that no reasonable jury could have believed him." *Id.* at 380. The question then becomes whether the facts, as described by plaintiff, support a claim that plaintiff's constitutional rights were violated.

Most of the facts leading up to the incident are generally uncontested. Both parties agree that Officer Henry first encountered plaintiff as he approached the car. It is uncontested that plaintiff

reached down toward the floor of the car. Plaintiff claims he was attempting to apply the emergency break. Officer Henry, however, grew suspicious of this movement as many people keep weapons under the seat. Officer Henry responded by forcefully removing plaintiff from the vehicle. At this point the two stories diverge—plaintiff claims Officer Henry began excessively beating him despite no provocation on his part and Officer Henry claims plaintiff tackled him into a fence which resulted in an ensuing struggle. Officer Henry also claims he felt plaintiff reach for his gun and his taser. Both parties admit that plaintiff was tased. Plaintiff again states he was unjustifiably tased because he did nothing to resist arrest. Officer Henry claims he used the taser to restrain plaintiff as he refused to comply with officer directives and was grabbing for his weapon.

Defendants argue that plaintiff is collaterally and judicially estopped from denying he resisted arrest based on his guilty pleas for battery. They further argue that plaintiff's § 1983 claim is precluded under *Heck v. Humphrey*, 512 U.S. 477 (1994) because "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. As noted previously, plaintiff did not respond to defendant's arguments.

Normally this court would be obliged to view the facts in a light most favorable to plaintiff, so long as they were supported by evidence in the record. Here, however, the court does not accept plaintiff's account of the events, as he continues to argue he was beaten without provocation. Plaintiff steadfastly claims that during the 45-second incident that led to his arrest he never resisted or fought the officers—yet he pleaded guilty to three counts of battery. His guilty pleas are inconsistent with his current allegation that he was passive during the encounter with defendants, and he is therefore judicially estopped from claiming he was beaten without provocation.

Judicial estoppel is "based upon protecting the integrity of the judicial system by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Bradford v.*

*Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (citing *New Hampshire v. Maine*, 532 U.S. 742 (2001)). Courts generally consider three factors when determining whether judicial estoppel applies in a case: 1) whether a party's later position is clearly inconsistent with its earlier position; 2) whether a party has persuaded a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and 3) whether the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped. *Wiggins*, 516 F. 3d at 1194. Judicial estoppel, however, should be applied with caution "because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party." *Id.*

In *Davis v. McCarter*, 569 F. Supp. 2d 1201, 1203–04 (D. Kan. 2008), the court held that a plaintiff, who pled guilty to felon in possession of a firearm, was judicially estopped in his excessive force § 1983 action from asserting that he did not have a gun during the incident that led to his felon in possession charge. The court evaluated the facts of the case disregarding plaintiff's claim he did not have a gun and determined the officers did not use excessive force during the arrest. *Id.* at 1206.

Here, much like *Davis*, plaintiff's account of the incident giving rise to his § 1983 excessive force claim is inconsistent with his guilty pleas to the battery charges that resulted from the same incident. Plaintiff claims he was unjustly beaten by defendants without provocation on his part. For example, when asked in his deposition whether he attempted to resist when pulled out of the car by Officer Henry, plaintiff answered:

> No, I did not. He pulled me out of the car, threw me on the ground. Somehow another I got turned around and the way that my head was facing the car, threw me on the ground, pounced on top of me. And in that same regard, I'm looking back up to him, asking him, what did I do, what did I do, and he never told me."

(Doc. 38-2, at 10.) Plaintiff claimed Officer Henry repeatedly told him not to resist, to which he responded "I am not resisting." (*Id.*, at 11.) He denied ever tackling officers onto the fence or battering them, and denied grabbing for Officer Henry's weapon, yet he also admitted to pleading guilty to three counts of battery.

According to the journal entry, plaintiff was convicted of battery under § K.S.A. 21-5413(a)(2), which is "knowingly causing physical contact with another person when done in a rude, insulting or angry manner." It is inconsistent for plaintiff to claim that he was physically passive during the 45-second arrest and that he was beaten without provocation when he pleaded guilty to causing rude, insulting or angry physical contact with the officers. It should be noted that in the original complaint, plaintiff was charged with felony Attempted Robbery for attempting to pull the gun from Officer Henry's holster. This charge, as well as two other charges from the original complaint, was later amended to misdemeanor Battery as part of a plea deal. Thus, plaintiff benefitted from his guilty plea and would derive an unfair advantage by now changing his position in order to benefit in his current action. Because all three factors of the judicial estoppel test are met, the court finds plaintiff is estopped from asserting he was physically passive during his arrest.

Because plaintiff is estopped from claiming he was beaten without provocation, the court can assume there was some level of physical resistance during the incident. The court must therefore decide whether defendants' conduct violated plaintiff's constitutional rights.

In *Graham v. Connor*, 490 U.S. 386 (1990), the Supreme Court held that when an excessive force claim arises in the context of an arrest, the constitutional right at issue "is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures of the person." *Id.* at 394. The Fourth Amendment is violated when force is "excessive under objective standards of

reasonableness." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. Objective reasonableness turns on the "facts and circumstances of each particular case," and a court must make such a determination "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. *See also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2476 (2015) ("For these reasons, we have stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer.").

The arrest of an individual suspected of breaking the law carries special considerations. The Supreme Court has reasoned that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. When judging reasonableness under the Fourth Amendment, courts must also recognize that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or the threat thereof to effect it." *Id.* at 396. Therefore, when evaluating a claim of excessive force, courts must keep in mind that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Id.* This also applies when an officer makes a reasonable judgment call—mistaken or not—as to the level of threat a suspect poses. *See Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (noting "even if an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed.")

The Supreme Court has set out a list of factors to consider when evaluating reasonableness in an excessive force claim: (1) the severity of the crime at issue, (2) whether the suspect poses an

immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The factors should be considered paying "careful attention to the facts and circumstances of each particular case." *Id.*

Defendants claim that any force used against plaintiff was in response to his physical aggression toward them, including when plaintiff tackled Officer Henry into a fence and continued to struggle until Officer Henry felt him grabbing for his gun and felt it necessary to use his taser. Although plaintiff denies reaching for the gun, the court, again, must evaluate the situation considering the reasonable perspectives of the officers. Even if plaintiff did not reach for the gun, Officer Henry had a reasonable belief he did.

When considering the three factors from *Graham*, the court finds that any force used by defendants in response to plaintiff's physical aggression was justified. Although the severity of the crime at issue was low—a traffic violation—the situation quickly escalated as plaintiff resisted arrest and posed a threat to the officers. For these reasons, the court finds there was no constitutional violation and that the force used was justified under the circumstances.

Plaintiff further claims that Officer Henry delivered a final punch to his left side even after he was handcuffed. This single blow is not enough to give rise to a Fourth Amendment violation. *See Davis*, 569 F. Supp. 2d at 1207 ("As to Davis's claim that he was struck by McCarter after he was apprehended, the Court finds that the single blow which was treated with ice after the incident is not enough to establish a Fourth Amendment violation.") (citing *Cortez*, at 1126–27; *Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001))).

Because there is no underlying constitutional violation, the court also finds that the other defendant, Officer Moore, is not liable for failure to intervene.

For these reasons, the court finds defendants are entitled to qualified immunity and therefore grants their motion for summary judgment.

**IT IS THEREFORE ORDERED** that defendants Motion for Summary Judgment (Doc. 37) is granted.

This case is closed.

Dated July 7, 2017, at Kansas City, Kansas.

                s/ Carlos Murguia
                **CARLOS MURGUIA**
                **United States District Judge**